MRS. W. M. BLUDWORTH,[1] PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 6285–6292.　Promulgated June 23, 1927.

1. Fair market value of real estate and bank stock, as of the date of the death of the testator, determined.

2. Where property is sold without any cash payment, but more than 25 per cent of the sales price is later paid during the taxable year in which the sale was made, the profit may not be reported on the installment sales basis.

---

[1] Proceedings instituted by the following named petitioners were consolidated with the above-entitled proceeding and are decided herewith: Myrtle B. Watson, No. 6286; P. A. Bywaters, No. 6287; K. Hunter Bywaters, No. 6288; R. S. Bywaters, No. 6289; Claud Morgan, No. 6290; Horace S. High and Margaret High Norment, as sole beneficiaries under the last will and testament of Phoebe High, deceased, No. 6291; Ollie Hunter, No. 6292.

*J. M. McMillin, Esq.*, for the petitioners.
*George G. Witter, Esq.*, for the respondent.

The petitioners pray for the redetermination of deficiencies in income taxes for 1919 determined by the Commissioner as follows:

| | |
|---|---:|
| Mrs. W. M. Bludworth | $133.57 |
| Myrtle B. Watson | 226.09 |
| P. A. Bywaters | 288.36 |
| K. Hunter Bywaters | 289.88 |
| R. S. Bywaters | 302.59 |
| Claud Morgan | 590.71 |
| Phoebe High | 2,016.86 |
| Ollie Hunter | 1,710.56 |

Phoebe High having died during the pendency of the proceeding and no representative of her estate having been appointed, the beneficiaries under her will were, on motion ordered substituted as petitioners in the proceeding instituted by her. The same issues being involved in each of the appeals, they were consolidated and heard together.

The petitioners allege that the Commissioner erred in his determination of the fair market value, at the date of death of J. K. Bywaters, of certain property inherited by the petitioners in 1916 from said deceased, which value was used as the basis for determining the gain from the sale of such property in 1919. They further allege that the Commissioner erred in determining that the entire profit from the sale of such property was to be reported in the year of the sale.

FINDINGS OF FACT.

J. K. Bywaters died on or about March 23, 1916, leaving an estate which he disposed of by will, which was duly admitted to probate. The probate proceedings were closed and the executors were discharged in 1918. The heirs were of the opinion that a partition of the estate was inadvisable and appointed E. R. Hunter, C. G. Shull, and Walter Bywaters as their attorneys in fact to manage the properties, collect the income from same, dispose of such properties as it was deemed advisable to sell, and distribute the income and proceeds of the sales to the heirs.

In 1919, the attorneys in fact, acting for the heirs of said J. K. Bywaters, sold 742 acres of land located near Paris, Tex., to E. R. Hunter for $33,390. There was no cash payment. The entire sale price was paid by a note of Hunter for $33,390 dated January 17, 1919, and due September 1, 1922. It was secured by a vendor's lien on the property sold. An agreement was made in respect to

payments to be made on said note which was endorsed on said note, as follows:

It is agreed between the maker and the payees of this note that the same is to be paid out of the interest of the maker in the collections to the credit of the J. K. Bywaters estate, and I, the maker hereof, do hereby authorize the said Walter Bywaters and Graves Shull, as Attorneys in Fact, to apply my interest in the collections to the credit of said estate in the payment of this note.

(Signed)      EDGAR HUNTER.

The purchaser was an assignee of an interest in the estate.

Payments were made on said note as follows:

| | |
|---|---:|
| April 2, 1919, cash | $8,828.02 |
| November 11, 1919, cash | 10,000.00 |
| April 6, 1922, cash | 5,000.00 |
| January 11, 1923, cash | 5,000.00 |

The Commissioner determined the fair market value of said land on March 23, 1916, to be $21,700. The fair market value thereof on said date was $29,680.

In 1919, the attorneys in fact, acting for the heirs of said J. K. Bywaters, sold certain properties to C. G. Shull for $46,425. There was no cash payment made on this sale. The entire sale price was paid by a note of Shull dated January 1, 1919, and due September 1, 1922, and was secured by a lien on the property sold. An agreement was made with respect to payments to be made on said note, which was endorsed on said note, as follows:

It is agreed between the maker and the payees of this note, that the same is to be paid out of the interest of the maker in the collections to the credit of the J. K. Bywaters Estate, and I, the maker hereof do hereby authorize the said Walter Bywaters and Edgar Hunter, as Attorneys-in-fact, to apply my interest in the collections to the credit of said Estate to the payment of this note.

(Signed)      C. G. SHULL.

Payments were made on said note as follows:

| | |
|---|---:|
| April 2, 1919, cash | $10,000.00 |
| November 11, 1919, cash | 10,000.00 |
| April 6, 1922, cash | 5,000.00 |
| December 11, 1922, cash | 16,000.00 |
| January 11, 1923, cash | 500.00 |
| May 11, 1926, cash | 425.00 |

The Commissioner determined the profit on the sale to C. G. Shull to be $17,759.97.

In the year 1919 the attorneys in fact, acting for the heirs of J. K. Bywaters, sold 15 shares of stock of the City National Bank of Paris, Tex., and 40 shares of the stock of the First National Bank of Paris, Tex., for a total sale price of $10,910. The Commissioner deter-

mined the fair market value of such stock to have been $5,500, at the date of the death of J. K. Bywaters. The fair market value of said stock at the date of the death of J. K. Bywaters was $5,500.

In 1919, the attorneys in fact, acting for the heirs of J. K. Bywaters, sold 50 shares of stock of the First State Bank of Paris, Tex., for $9,750. The Commissioner determined the fair market value of said stock at the date of the death of J. K. Bywaters to be $5,000. The fair market value of the 50 shares of said stock at the date of the death of J. K. Bywaters was $5,000.

The petitioners were heirs of J. K. Bywaters and by reason thereof held undivided interests in the properties sold as follows:

| | |
|---|---|
| Mrs. W. M. Bludworth | 2/65ths |
| Myrtle B. Watson | 2/65ths |
| P. A. Bywaters | 2/65ths |
| K. Hunter Bywaters | 2/65ths |
| R. S. Bywaters | 2/65ths |
| Claud Morgan | 1/13th |
| Phoebe High | 2/13ths |
| Ollie Hunter | 2/13ths |

The Commissioner determined that the gain from each of the sales was the difference between the sales price and the fair market value at the date of the death of the decedent and that the full amount of such gain was taxable in 1919. He allocated a part of such gain to each of the taxpayers, in accordance with the interest of each in the property and determined the deficiencies here in issue accordingly.

OPINION.

PHILLIPS: The pleadings raise two questions: (1) The fair market values of certain properties at the date of death of J. K. Bywaters on March 23, 1916, and (2) whether the gain should be reported by the heirs in 1919 or on the installment basis as payments were received. Upon the latter issue the petitioners rely entirely upon section 212(d) of the Revenue Act of 1926 which, by section 1208 of the same act, is to be retroactively applied in computing income under prior acts. Section 212(d) provides:

(d) Under regulations prescribed by the Commissioner with the approval of the Secretary, a person who regularly sells or otherwise disposes of personal property on the installment plan may return as income therefrom in any taxable year that proportion of the installment payments actually received in that year which the total profit realized or to be realized when the payment is completed, bears to the total contract price. In the case (1) of a casual sale or other casual disposition of personal property for a price exceeding $1,000, or (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner prescribed in this subdivision. As used in this subdivision the term "initial payments" means the payments

received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

Here the "taxable period in which the sale is made" was the calendar year 1919. The payments received in cash during such period were in excess of one-fourth of the purchase price. Since such payments are expressly included within the term "initial payments," it appears that the petitioners have failed to bring themselves within the provisions permitting the income from a casual sale of personal property or a sale of real property to be returned on the basis described in that subdivision of the statute. We do not understand that petitioners claim that they meet the requirements of the first sentence of the subdivision, as persons "who regularly sell or otherwise dispose of personal property on the installment plan." Therefore, so far as this issue is concerned, we must affirm the determination of the Commissioner that any gain is taxable in 1919.

The uncontradicted evidence fully sustains the petitioners' contention that the 742 acres of land which were sold to E. R. Hunter had a value of $40 per acre at the date of death of J. K. Bywaters. As to the property sold to Shull, no contention is made that the market value determined by the Commissioner is incorrect, the only contention being that the profit should be returned in the years in which payment is made.

It is the contention of the taxpayers that the stock of the City National Bank of Paris, Tex., the First National Bank of Paris, Tex., and the First State Bank of Paris, Tex., had a value of $200 per share at the date of death of J. K. Bywaters. The Commissioner determined a value of $100. To sustain their valuation the petitioners called as witnesses the vice president of the First National Bank of Paris and the cashier of the City National Bank in 1916. Each testified that in his opinion the value of these stocks at the time of Bywaters' death was $200 per share. It appeared from their testimony that each of these witnesses had acted as appraisers of the estate of Bywaters and that as such appraisers they had valued such stock at $100 per share, executing as a part of their report the following oath:

We the undersigned appraisers do solemnly swear that the foregoing is a full and fair appraisement of the estate of J. K. Bywaters, deceased, produced before us by Edgar Hunter and Graves Shull, Ex'r.

They testified that it was agreed between the appraisers that all of the bank stock should be put in the appraisal at par and that this accounted for the values used. It further developed that two days prior to the death of Bywaters a fire had occurred in Paris, Tex., which destroyed 80 per cent of the business section of the city; that the effect of the fire on business conditions was not then known and

that business was unsettled for some time. The appraisal was made within two months after the death of Bywaters and after the fire.

Considering this uncertainty and considering also the double liability attaching to owners of stock in such banks, we are inclined to believe that the appraisal made two months after the decedent's death more accurately reflects the situation than an opinion expressed at the present time. The witnesses attempt to support their opinion by references to sales and to the surplus and undivided profits of the banks but the testimony with reference to both is very unsatisfactory, especially with reference to the dates when such sales took place. The witnesses had not attempted to refresh their recollection respecting sales some ten years past and, except as the opinion might be affected by subsequent events, had no more knowledge of the value of the stock when they testified in this proceeding than they had in 1916 when they made the appraisal. After a consideration of all the testimony we believe that the value placed upon this stock by the witnesses at the hearing was unconsciously affected by the successful recovery of the city and the banks from the fire which had taken place two days before the decedent's death. While the value placed upon the stock in the appraisal made two months after the date of decedent's death may have been low, and subsequent events may have shown that circumstances which affected that valuation never materialized, it is our opinion that it more nearly reflects the fair market value of the stock at the date of the death of Bywaters than does the opinion now expressed by the witnesses.

*Decision will be entered on 20 days' notice, under Rule 50.*